UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITA V. LUNA,<br><br>                Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Case No. 1:20-cv-01213-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 20). |

      This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance and supplemental security income benefits. (ECF No. 1, p. 1) The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 11).

      Plaintiff presents the following four errors:

      (1) The ALJ committed harmful error by failing to give "specific and legitimate" reasons for rejecting the long-term, treating RFC [residual functional capacity] opinions of record from Drs. Gomez and Truta;

      (2) The ALJ harmfully erred by failing to provide clear and convincing reasons to reject symptomology evidence;

(3) The RFC is not supported by substantial evidence; and

(4) The "New and Material" Evidence submitted to the Appeals Council (AC) would change the outcome of the decision.

(ECF No. 20, p. 6). Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I. ANALYSIS

### A. Treating Physicians' Opinions

Plaintiff argues that "[t]he ALJ committed harmful error by failing to give 'specific and legitimate' reasons for rejecting the long-term, treating RFC opinions of record from Drs. Gomez and Truta." (ECF No. 20, p. 19). The Ninth Circuit has held the following regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6).
>
> "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).[1]

Here, the opinions of Dr. Gomez and Dr. Truta were contradicted by other doctors (*e.g.*,

---

[1] Because Plaintiff filed her application before March 27, 2017, 20 C.F.R. § 404.1527 applies in considering the weight given to her treating physicians' opinions. For applications filed on or after March 27, 2017, 20 C.F.R. § 404.1520c applies in considering medical opinions; notably, no deference or specific evidentiary weight is given to medical opinions.

consultative examining physicians and State agency consultants) and thus the Court reviews the ALJ's decision to see if she provided specific and legitimate reasons that are supported by substantial evidence for the weight given to the opinions of Dr. Gomez and Dr. Truta.

### 1. Dr. Gomez's Opinion

The ALJ assigned reduced weight to the opinion of Plaintiff's treating physician, Dr. Evelyn Gomez, giving the following reasons:

> As for the opinion evidence with regard to the claimant's physical impairments, the claimant's treating physician, Evelyn Gomez, M.D., submitted a Report dated July 25, 2016, on behalf of the claimant. Dr. Gomez opined that the claimant cannot perform any job at this time due to "impairment on mental and motor abilities" from seizures and medication side effects [Exhibit B11F and Exhibit B15F, B17F]. Dr. Gomez noted that she treated the claimant between 2-5 years. Although Dr. Gomez is a treating physician with knowledge of the claimant, an opinion by a medical source that a claimant is disabled or unable to work is not conclusive. The determination of disability is an issue reserved to the Commissioner and, as such, is an administrative finding that directs the determination or decision of disability [20 CFR 404. 1527(d) and 416.927(d)]. Dr. Gomez's opinion corroborates the finding that the claimant has severe physical impairments which more than minimally limit the ability to perform work activity, however her conclusions regarding the limitation associated with those impairments is discounted because it is inconsistent with the record as a whole, specifically with respect to the Medical Source Statement dated March 10, 2018. In this Statement, the provider opined that that the claimant can sit for less than two hours in an eight hour day; she can stand and or walk for less than two hours in an eight hour day; she would need a job that permitted shifting positions at will; she would need periods of walking around, every 10 minutes, for 10 minutes each time; she must elevate her legs while sitting and or for 50% of the time; she does not need a hand-held assistive device for occasional standing and or walking; she can frequently lift and or carry up to 10 pounds; she can never lift and or carry 20 pounds or more; she can rarely twist; she can occasionally stoop (bend); she can frequently crouch, squat, and climb stairs and ladders; she has no manipulative limitations; she would likely be off task for 25% or more of the day; she is incapable of even "low stress" work; she would likely, on average, be absent from work more than four days per month; and she will need unscheduled breaks every two hours for one-half hour each time during which she will need to sit quietly. This provider further opined that the claimant has had these limitations since 2015 [Exhibit B17F]. This opinion is inconsistent with the record as a whole, as well overly restrictive. Specifically, the evidence lacks laboratory studies showing continued or uncontrolled seizure activity despite use of anti seizure medications at therapeutic levels. There is little medical evidence of record to support the limitations for standing, walking, and or the need for the claimant to elevate her

3

      legs. This opinion is also inconsistent with the claimant's activities of daily living, including the ability to travel internationally without medical restrictions. For these reasons, this opinion is given reduced weight.

(A.R. 45-46).

The first reason identified to support the ALJ's assignment of reduced weight to Dr. Gomez's opinion is that "the evidence lacks laboratory studies showing continued or uncontrolled seizure activity despite use of anti seizure medications at therapeutic levels." (A.R. 46; *see also* A.R. 42 ("Although the claimant has alleged seizures, the medical evidence of record indicates that these are controlled with medications. . . .")). While "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole [] or by objective medical findings," here, the record shows that Plaintiff continued to experience seizure activity despite taking her seizure medications as directed by medical professionals. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (internal citations omitted).

For example, in a consultation with Dr. Rohini Joshi on December 17, 2015, Dr. Joshi added another medication for Plaintiff to take after it was noted that Plaintiff still felt that she was having seizures despite taking other medication. (A.R. 858). Despite the added medication, on December 31, 2015, Plaintiff went to the emergency room with a "recurrent seizure." (A.R. 771). In a follow-up visit with Dr. Joshi on January 21, 2016, recent seizure activity was documented, and Plaintiff's dosage of one of her medications was increased. (A.R. 851). On March 9, 2016, Dr. Joshi noted that Plaintiff had not had any more recent seizures but that Plaintiff was "feeling dizzy, almost every[] day." (A.R. 841). Plaintiff saw Dr. Joshi on April 1, 2016, reporting continued dizziness. (A.R. 837). Dr. Joshi directed her to stop taking one of her seizure medications for three days. (A.R. 840). On April 12, 2016, Plaintiff reported her dizziness as "slightly better," and Dr. Joshi again reduced the same seizure medication. (A.R. 827). However, on June 27, 2016, Plaintiff reported having seizures again and chest pain. (A.R. 1233). Dr. Joshi increased the dosage of the seizure medication that had been previously reduced. (A.R. 1237).

In a visit with Dr. Gomez on July 11, 2016, Plaintiff's seizures were reported as "still not under control," with Plaintiff having "3 in the past month and one yesterday," despite the medical record noting that her dose of one seizure medication had recently been increased. (A.R. 1306). On July 28, 2016, Plaintiff met with Dr. Joshi, who documented recent seizures and Plaintiff visiting the ER.[2] (A.R. 1222). Plaintiff saw Dr. Gomez on August 8, 2016, who reported that Plaintiff's "seizures [were] still not under control, has had 2 in the past month," and noted that another seizure medication had been prescribed and that Plaintiff was feeling drowsy and wanted "to stay [in] bed all the time." (A.R. 1301). Further visits with various medical providers in 2016, 2017, and 2018 reveal recurring instances of Plaintiff experiencing seizures or side effects from her medication and changes to her seizure medication. (*See* A.R. 994, 1045, 1105, 1166, 1171, 1232, 1292). Notably, roughly two weeks before her disability hearing before the ALJ, Plaintiff reported continued seizure activity and dizziness to Dr. Joshi. (A.R. 994). Moreover, medical records for treatment after Plaintiff's hearing show that Plaintiff continued to experience seizure activity.[3] (A.R. 68, 102, 124).

In light of this record, the ALJ's focus on the lack of "laboratory studies showing continued or uncontrolled seizure activity despite use of anti seizure medications at therapeutic levels" is not a legitimate reason to discount Dr. Gomez's opinions about Plaintiff's work limitations. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) ("However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'") (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.1989)). Notably, the presence or absence of laboratory studies is not ultimately

---

[2] This record notes that Plaintiff's level of one seizure medication was low but does not indicate that it was due to Plaintiff not taking her medication as directed.

[3] As discussed below, although this evidence was first presented to the Appeals Council, the Court may consider it, in light of the record as a whole, to determine whether the ALJ's decision was supported by substantial evidence. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). ("Accordingly, we hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").

responsive to Dr. Gomez's opinion. *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("The ALJ's reason for rejecting Dr. Doerning's opinion—that the record did not contain evidence of 'decreased range of motion' or 'neurological deficits'—is not 'legitimate' because it is not responsive to Dr. Doerning's opinion based on Orn's respiratory problems."). Importantly, part of Dr. Gomez's opinion on Plaintiff's limitations, such as the conclusion that Plaintiff was incapable of even low stress work, was based on the side effects Plaintiff experienced from taking anti-seizure medication. (A.R. 975). Here, because medical providers often adjusted the levels of Plaintiff's seizures medication (or changed the medications) in response to Plaintiff's continued seizures or side effects from the medications, treating Plaintiff's seizures and addressing the side effects from her medications was an ongoing struggle. Accordingly, the ALJ's conclusion that therapeutic levels of anti-seizure medication controlled Plaintiff's seizures, even if true, does not account for the side effects that Plaintiff continued to suffer from her medications, which side effects limited her ability to work according to Dr. Gomez.

The second reason the ALJ gave to assign reduced weight to Dr. Gomez's opinion is that "[t]here is little medical evidence of record to support the limitations for standing, walking, and or the need for the claimant to elevate her legs."[4] (A.R. 46). This conclusion overlooks or ignores the record. As noted above, side effects from Plaintiff's medications, such as the dizziness that Plaintiff often reported, informed Dr. Gomez's medical source statement, which found limitations on Plaintiff's ability to stand and walk. Additionally, consultative examiner Dr. Dale Van Kirk, noted in March 2016 that Plaintiff complained of neck pain and low back pain that radiated down both her legs. (A.R. 732). While Dr. Van Kirk noted that Plaintiff was able to move about normally in some ways, he also noted that in a "Romberg test . . . she wavers and almost falls after five seconds." (A.R. 734). And Plaintiff had difficulty "tandem walking with one foot in front of the other . . . because her balance is not good" and noted that "[s]he appears to be a bit

---

[4] The Court concludes that there was little medical evidence to support Dr. Gomez's recommendation that Plaintiff would need to elevate her legs; however, this is not a sufficient basis alone to reject the entirety of Dr. Gomez's opinion.

dizzy." (*Id.*). Dr. Van Kirk concluded that Plaintiff might "benefit by carrying a collapsible cane with her when she is out and about for even and uneven terrain for times when she feels unsteady." (A.R. 735). Moreover, the record shows that Dr. Joshi prescribed handrails in Plaintiff's bathroom (A.R. 1067) and that Dr. Gomez noted that Plaintiff was "unable to walk straight due to pain and worsening weakness (A.R. 1258). There was no legitimate basis for the ALJ to ignore or overlook this evidence in concluding that "little medical evidence" supported Dr. Gomez's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").[5]

Lastly, the ALJ concluded that Dr. Gomez's opinion was "inconsistent with the claimant's activities of daily living, including the ability to travel internationally without medical restrictions." (A.R. 46). Specifically, the ALJ was referring to Plaintiff's trips to Mexico, at least one of which included air travel. (A.R. 42 ("For example since the alleged onset date, she traveled internationally on more than one occasion, in the spring of 2016 and in approximately February 2017, as well as in February 2018, which included a three and one-half hour plane ride.")); (*see* A.R. 203 – Plaintiff's testimony noting flight to Morelia, Mexico).

As the Ninth Circuit "has repeatedly asserted, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050

---

[5] The Court recognizes that the Commissioner argues that Dr. Gomez's own notes are inconsistent with her assessment of Plaintiff's limitations. (*See, e.g.*, ECF No. 24, p. 22 ("Dr. Gomez's treatment notes from November 2015 state that Plaintiff was neurologically alert with no focal defects, exhibited normal range of motion, had no musculoskeletal deformities, and exhibited a normal gait (AR 650)."). However, this is a new argument not relied upon by the ALJ, and thus, even if it was ultimately persuasive, this Court may not affirm based on it. *Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

(9th Cir. 2001)) (alteration in original). Here, the ALJ offered no specific reason for why Plaintiff's limited international travel was inconsistent with Dr. Gomez's opinions. Perhaps, the ALJ believed that Plaintiff's three-and-a-half hour flight was inconsistent with Dr. Gomez's conclusion that Plaintiff was limited to sitting for less than two hours in an eight hour day. As an initial matter, such reasoning presumes that Plaintiff was seated the entire time on the flight and would not have been able to move around the plane.[6] Regardless of whether such presumption is true, Plaintiff's ability to sit longer than recommended while travelling does not indicate that she could undertake the daily demands of sitting required by a job. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("In addition, activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.").

For the above reasons, the Court concludes that the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, to assign Dr. Gomez's opinion reduced weight.

### 2. Dr. Truta's Opinion

The ALJ ultimately assigned the opinion of Plaintiff's treating psychiatrist, Dr. Mircea Truta, discounted weight, giving the following reasons:

> As for the opinion evidence with regard to the claimant's mental health impairments, the claimant's treating psychiatrist, Mircea Truta, M.D., wrote a letter dated August 2, 2016, on behalf of the claimant. Dr. Truta indicated that the claimant has been in treatment at Kings View Counseling since October 2013. Dr. Truta stated that despite this treatment, the claimant continues to experience chronic depression and anxiety. Dr. Truta opined that the claimant is not able to complete simple tasks in a timely fashion, has episodes of decompensation, and cannot perform any job at this moment due to "impairment on mental and motor abilities" [ExhibitB12F and Exhibit B16F].

---

[6] Dr. Gomez's opinion noted that Plaintiff would require a job that permitted her to shift positions and switch between standing and sitting. The record does not reflect that the ALJ considered whether Plaintiff could have shifted positions or stood up from time to time on her flight. (A.R. 45, 973-74).

> Dr. Truta also completed a Mental Residual Functional Capacity Questionnaire dated March 26, 2018. Dr. Truta opined that the claimant would be precluded from performing almost all mental activities related to understanding and memory, sustained concentration and memory, social interaction, and adaptation for 15%, or 72 minutes, of an eight hour workday. Dr. Truta further opined that the claimant would likely, on average, be absent from work five days or more per month, and would likely be unable to complete an eight hour day five or more days per month. Dr. Truta also opined that the claimant has had these limitations since October 2013 [Exhibit B18F]. The undersigned gives great weight to Dr. Truta's opinion and statements in establishing the presence of severe impairments but discounted weight as to the degree of limitations opined with respect to simple, routine tasks, concentration, social interaction and adaptation. Although Dr. Truta has knowledge of the claimant, her opinions are inconsistent with the record as a whole, as discussed above, as well as with the claimant's own testimony regarding her activities of daily living. Specifically, the evidence lacks studies demonstrating uncontrolled seizures despite compliant, therapeutic use of anti seizure medication. The medical evidence of record indicates that the claimant reported improvement in her symptoms, further corroborated by the claimant's ability to engage in international and interstate travel during the relevant period. In addition, many of the claimant's complaints of depression and anxiety appeared to be situational as were reported to be relating to her finances and her disabled husband's health. . . . For these reasons, Dr. Truta's opinions are given discounted weight.

(A.R. 47).

The ALJ first discounted Dr. Truta's opinion because "the evidence lacks studies demonstrating uncontrolled seizures despite compliant, therapeutic use of anti seizure medication." (A.R. 47). However, as discussed in connection with Dr. Gomez's opinion, the ALJ overlooked or ignored extensive record evidence indicating that Plaintiff continued to experience seizures and sides effects from medications while medical providers adjusted her medications. Accordingly, this is also not a legitimate reason to discount Dr. Truta's opinion.

The second reason, that "[t]he medical evidence of record indicates that the claimant reported improvement in her symptoms, further corroborated by the claimant's ability to engage in international and interstate travel during the relevant period" also fails. Notably, the ALJ cited no specific records of Plaintiff's mental health symptoms improving when discussing Dr. Truta's opinion. However, the ALJ did briefly summarize Plaintiff's mental health treatment elsewhere in the opinion:

> In terms of the claimant's alleged mental health impairments, the claimant has received mental health treatment including counseling and psychiatric medication management, since October 2013, and through April 2018, for her complaints of depression, low energy, low motivation, fatigue, and passive suicidal ideation, with the diagnoses of major depressive disorder and generalized anxiety disorder. However, in a therapy visit on September 1, 2015, just prior to the claimant's amended alleged onset date, the claimant appeared cheerful and reported that she is feeling more motivated. She further stated that although she still gets depressed, it is not like before and she will only stay in bed maybe once or twice a week and sometimes less than that. She also reported that her parents were visiting for the next two weeks. In January and February 2017, the claimant reported feeling better and less depressed, as well as less anxious but still experiencing some symptoms such as forgetfulness, poor concentration, and isolating herself. However, in November 2017, despite the claimant's history of ongoing mental health treatment, she again alleged feelings of depression and anxiety due to her poor health, financial situation, and her husband's poor health [Exhibit B10F/1-12, 15-18, 25-39; Exhibit Bl2F; Exhibit B21F/2-31, 31-32, 42-62, 71-73, 75, 78-80, 82, 86-93, 95-103, 105-112, 114-121].

(A.R. 45).[7] Even accepting this recitation of such records as signaling improvement in Plaintiff's mental health, the ALJ failed to explain how such improvement now meant that Plaintiff was no longer bound by the work limitations opined by Dr. Truta. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). As for the ALJ's citation to Plaintiff's sparse travel history, is not a legitimate basis to discount Dr. Truta's opinion as inconsistent for the same reasons noted in connection with Dr. Gomez's opinion.

Lastly, the ALJ reasoned that "many of the claimant's complaints of depression and anxiety appeared to be situational as were reported to be relating to her finances and her disabled husband's health." (A.R. 47). Presumably, the ALJ's point is that such "situational" circumstances would only temporarily cause Plaintiff to experience mental health symptoms and thus Dr. Truta's opinion as to Plaintiff's work limitations was not reliable. However, the ALJ failed to cite any evidence indicating that such circumstances were indeed "situational," and even

---

[7] The Court recognizes that the Commissioner supplements the ALJ's reasoning with citations to pertinent records that the ALJ did not discuss. (ECF No. 24, pp. 19-20). However, as noted above, this Court's review is limited to the ALJ's reasoning. *Orn*, 495 F.3d at 630.

if they were, she did not explain why Plaintiff's other non-situational circumstances, such as her own health problems and fear of going out in public would no longer cause her to experience mental health symptoms so as to discount Dr. Truta's opinion.[8] (*See* A.R. 900, 931).

For the above reasons, the Court concludes that the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, to assign Dr. Truta's opinion discounted weight.

## B. Subjective Testimony

Plaintiff argues that "[t]he ALJ harmfully erred by failing to provide clear and convincing reasons to reject symptomology evidence." (ECF No. 20, p. 32). The Ninth Circuit has provided the following guidance regarding a plaintiff's subjective complaints:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 41). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1014 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.2002)).

---

[8] For example, the ALJ failed to cite any evidence that Plaintiff's financial concerns were alleviated.

11

Here, the ALJ summarized the Plaintiff's subjective complaints and reasons for discounting them as follows:

> Although the claimant has alleged seizures, the medical evidence of record indicates that these are controlled with medications and there is no medical evidence of record that she has required any hospitalizations or emergency room (ER) visits for this condition. The claimant has also alleged occasional headaches for which she has not required significant intervention. Further, although the claimant has alleged neck and back pain, the medical evidence of record indicates a possible diagnosis of lumbago, as well as some neck pain; however, her physical examinations are mostly normal. Treatment notes indicate that the claimant's neck is supple with good range of motion. It also appears from the medical evidence of record that the claimant has only required treatment for mild pains. The claimant possibly has some balance problems; however, there is little evidence she has ever sought treatment for any balance problems.
>
> In addition, the claimant has received minimal treatment for her impairments, consisting mostly of medication refills. Further, in a treatment note from November 2015, it was noted that the claimant had not been seen by a neurologist since January. At the consultative physical examination in March 2016, the claimant reported that she has not had physical therapy, chiropractic care, acupuncture, or injections and does not use any braces or assistive devices and that none have been prescribed. There are also minimal imaging studies of the claimant's lumbar spine or cervical spine prior to 2017 [Exhibit B7F/2; Exhibit B9F/35, 37].
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the claimant has alleged that her seizure medications are no longer controlling her seizures and she is no longer able to perform household chores. However, these statements are inconsistent with the medical evidence of record, as discussed further below, which indicates that the claimant has reported, at times, having no seizures or seizure like activity for months at a time, and or only one seizure per month [Exhibit B13E; Exhibit BISE].
>
> . . . .
>
> In addition, the claimant's statement that she does not like to go out in public due to her fear of having a seizure and hurting herself is inconsistent with the overall record that claimant has both the mental and physical stamina inconsistent with the degree of limitation alleged. For example since the alleged onset date, she traveled internationally on more than one occasion, in the spring of 2016 and in approximately February 2017, as well as in February 2018, which included a three and one-half hour plane ride. In July 2017, the claimant also reported a recent trip out of state for a few weeks for a family event [Exhibit B10F/29; Exhibit B14F/6; Exhibit B20F/23, 34; Exhibit B21F/45-46, 51, 72; and testimony]. Medical evidence of record also corroborates a higher level of function than alleged: during

an office visit with her primary care physician in August 2015, the claimant reported that she has not had a seizure for one year, which is inconsistent with her allegation of continuing seizures that are not under control. The claimant was therefore given medication refills and scheduled for follow up. Additionally, although the claimant told her primary care physician in January 2016 that she had a seizure in December 2015, the claimant was only diagnosed with obesity and fatty liver at this time. She was advised as to exercise and diet, and otherwise continued on her medications. In addition, at the time of the alleged seizure in December 2015, the medical evidence of record indicates that the claimant's seizure was due to a sub-therapeutic dose of anti-seizure medication. The claimant also had a normal CT of the brain at this time. The claimant was therefore given appropriate treatment, after which she was discharged the same day in improved and stable condition. The claimant's primary care physician also diagnosed the claimant with complex partial epilepsy during office visits in January and March 2016, but merely continued the claimant on her medications with no changes [Exhibit B8E/15, 26; Exhibit B5F/l-3, 4-11, 15-17; Exhibit B8F/33-36, 41].

. . . .

There is also a significant gap in the claimant's treatment history for her seizure disorder from August 2017 until January 2018, except for an emergency room (ER) visit in November 2017 for a break through seizure; however, in a treatment note with her primary care physician in December 2017, the claimant also reported that she had run out of her seizure medications two days prior to the possible seizure in November. The medical evidence of record indicates that although the claimant was seen in the ER in November 2017, she was given minimal treatment consisting of advice to use heat and ice on her back, as well as to rest at home.

. . . .

In terms of the claimant's alleged mental health impairments, the claimant has received mental health treatment including counseling and psychiatric medication management, since October 2013, and through April 2018, for her complaints of depression, low energy, low motivation, fatigue, and passive suicidal ideation, with the diagnoses of major depressive disorder and generalized anxiety disorder. However, in a therapy visit on September 1, 2015, just prior to the claimant's amended alleged onset date, the claimant appeared cheerful and reported that she is feeling more motivated. She further stated that although she still gets depressed, it is not like before and she will only stay in bed maybe once or twice a week and sometimes less than that She also reported that her parents were visiting for the next two weeks. In January and February 2017, the claimant reported feeling better and less depressed, as well as less anxious but still experiencing some symptoms such as forgetfulness, poor concentration, and isolating herself. However, in November 2017, despite the claimant's history of ongoing mental health treatment, she again alleged feelings of depression and anxiety due to her poor health, financial situation, and her husband's poor health [Exhibit Bl0F/1-12, 15-18, 25-39; Exhibit Bl2F; Exhibit B21F/2- 31, 31-32, 42-62, 71-73, 75, 78-80, 82, 86-93, 95-103, 105-112, 114-121].

(A.R. 42-43, 44-45).

First, for the reasons discussed above, the medical records do not indicate that Plaintiff's seizures were controlled with medication. Moreover, the ALJ's conclusion that Plaintiff's seizures never required hospitalization is directly refuted by multiple medical records. (*See* A.R. 771 (documenting December 31, 2015 emergency treatment for seizure); A.R. 1045 (noting that Plaintiff had a seizure on November 23, 2017, "and was seen in [ER]"); A.R. 1222 (noting that Plaintiff "has had 3 seizures and she was seen in the [ER]")).

Likewise, the ALJ's rejection of Plaintiff's reports of pain and balance issues due to lack of treatment or mostly normal findings is not convincing. The medical record documents multiple instances of Plaintiff balance issues and neck and back pain. (A.R. 732, 734, 735, 1067, 1258). Moreover, Plaintiff's headaches are featured in the medical records frequently enough that it was error for the ALJ to simply dismiss them as "occasional" and not requiring "significant intervention." (A.R. 42). For example, a medical record from January 2015 noted that Plaintiff had "chronic migraines no[t] in optimal control." (A.R. 877). And another in October 2016, noted that Plaintiff had a "severe headache" following a seizure. (A.R. 1171; *see also* A.R. 124, 448, 771, 947). And relatedly, the ALJ erred in rejecting Plaintiff's testimony due to her not having received certain types of treatment, such as physical therapy and injections, when the ALJ failed to cite to any record evidence indicating that such treatment was warranted. *See Cortes v. Colvin*, No. 2:15-cv-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("While evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment, an ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment options are appropriate or available.") (internal citations and quotation marks omitted).

Next, the ALJ reliance on Plaintiff's sparse travel was not a convincing reason to conclude that she was able to do more than she claimed. Notably, the fact that Plaintiff was able to travel on a few occasions between 2016-2018, does not contradict her testimony that she does not like to

go out in public for fear of having a seizure and hurting herself. (A.R. 42). Plaintiff testified that for her international flight she traveled with her sister, who presumably would have assisted Plaintiff if she had a seizure in public. (A.R. 203; *see also* 1270 (noting trip to Chicago for a family event)).

Lastly, the ALJ's citation to Plaintiff's mental health records, which contain some reports of Plaintiff feeling better, is not a clear or convincing reason to reject Plaintiff's testimony. Notably, the ALJ fails to explain what testimony the records even conflict with. *Holohan*, 246 F.3d at 1208 ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). Moreover, the fact that Plaintiff experienced improvement, at times, in her mental health does not mean that she was capable of working. *Garrison*, 759 F.3d at 1017 (9th Cir. 2014) ("[Reports of improvement of mental health] must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.").

Accordingly, the Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

**C. RFC**

Plaintiff next argues that "[t]he RFC is not supported by substantial evidence." (ECF No. 20, p. 35). A court upholds a RFC determination "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the ALJ found the following RFC for Plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work as follows: lift and or carry 20 pounds occasionally and 10 pounds frequently; she can stand and or walk for six out of eight hours; she can sit for six out of eight hours; she can do work not involving concentrated exposure to flashing lights, unprotected heights, moving machinery, commercial driving or climbing ladders, ropes or scaffolds. She can occasionally climb ramps and stairs and balance. She can perform simple,

routine task in a moderate noise level intensity environment.

(A.R. 48).

Plaintiff alleges two errors from this determination. First, Plaintiff argues that the ALJ erred by affording great weight to Dr. Van Kirk's RFC determination while affording no weight to Dr. Van Kirk's conclusion that Plaintiff would benefit from the use of a collapsible cane, pointing to record evidence indicating that Plaintiff had trouble walking. (ECF No. 20, p. 35). Regarding Dr. Van Kirk, the ALJ concluded as follows:

> The consultative examining physician, Dr. Van Kirk, opined that the claimant can stand and or walk, cumulatively, for six hours in an eight hour day; she has no limitations for sitting; she might benefit from carrying a collapsible cane due to her balance issues and for when she feels unsteady; she can lift and or carry 20 pounds occasionally and 20 pounds frequently; she can perform postural activities occasionally; she has no manipulative limitations; and she should not work at unprotected heights [Exhibit B7F]. The majority of Dr. Van Kirk's opinion is consistent with the record as a whole, as discussed above, as well as with the claimant's activities of daily living. For these reasons, the majority of Dr. Van Kirk's opinion is given great weight.
>
> However, Dr. Van Kirk's opinion that the claimant might benefit from carrying a collapsible cane due to her balance issues and for when she feels unsteady is given discounted weight with respect to the residual functional capacity. The undersigned considered including the use of an assistive device in the residual functional capacity however declined because the examiner's reference to such was vague, appeared to be based on the claimant's subjective reports, and not supported by objective findings. The medical evidence of record has generally noted the claimant as having a normal gait, with little indication that the claimant has been diagnosed with any lower extremity impairment, has difficulty walking, and or has been prescribed or advised to use a cane for ambulation, even by her providers who otherwise advocated for a conclusion of disability. For these reasons, this portion of Dr. Van Kirk's opinion is given no weight.

(A.R. 46). The Court concludes that there was not substantial evidence to support the ALJ's rejection of Dr. Van Kirk's opinion as to Plaintiff benefiting from a cane. Notably, Dr. Van Kirk's opinion was not based, at least solely, on Plaintiff's subjective reports. Rather, Dr. Van Kirk noted that, in a "Romberg test," Plaintiff wavered and almost fell after five seconds. (A.R. 734). Moreover, observed that Plaintiff's "balance is not good" and that she appeared to "be a bit dizzy." (*Id.*). Moreover, other evidence in the record shows that Plaintiff had balance issues (AR

840 ("unsteady gait"), 863 ("balance problems"), 943 ("unstable gait")) and that she used a cane (A.R. 1258 ("walks with a cane")).

Second, Plaintiff argues that the ALJ should have included Dr. Gomez's limitation of twisting being limited to "rarely" performed by Plaintiff on the medical source statement. (ECF No. 20, p. 37). While Plaintiff attributes this finding "due to her severe back and neck pain," as the Commissioner points out, the medical source statement itself (A.R. 975) does not explain this finding but merely checks a box; moreover, Plaintiff offers no other evidence to support such a limitation as to twisting.[9] (ECF No. 24, p. 29). Accordingly, the Court does not conclude that the ALJ erred by failing to include Dr. Gomez's limitation on twisting in the RFC.

### D. New and Material Evidence

Plaintiff next argues that "[t]he '[n]ew and [m]aterial' [e]vidence submitted to the Appeals Council [] would change the outcome of the decision." (ECF No. 29, p. 37). Plaintiff asks this Court to review evidence submitted to the Appeals Council that would have changed the ALJ's decision had the ALJ considered the evidence, including the following records:

> Specifically, the AC failed to consider treatment records further documenting Ms. Luna's severe, constant headache symptomology; continued uncontrolled seizures with tongue biting; the fact that she required ER treatment after she fell "face forward" during a seizure and that her husband had witnessed another seizure. Specifically, these records include a January 23, 2018 treatment record where Nurse Madala documented Ms. Luna's complained of headaches 2-3 times per week, with forgetfulness, confusion, nervousness, not knowing where she is or where she is going, poor judgment, inappropriate behavior, sluggishness, and changes in sleep patterns. (AR 148). On a follow-up treatment record dated May 1, 2018, Dr. Joshi documented Ms. Luna experienced ongoing seizures with tongue biting, as well as frequent headaches for the last three months associated with nausea. (AR 124). Dr. Joshi continued Ms. Luna on current anti-seizure medications. (AR 129). On June 15, 2018, Dr. Joshi documented Ms. Luna was not doing well, as she has a seizure where she fell face forward and was taken to the ER. (AR 102). On a neurology follow-up visit with Dr. Joshi dated July 31, 2018, Ms. Luna reported she had a seizure on July 24th that was witnessed by her husband. (AR 68). Dr. Joshi continued prescriptions for her complex partial

---

[9] The Court recognizes that Dr. Van Kirk noted that Plaintiff's lower back pain increases if she has to twist. (A.R. 732). However, this brief reference to twisting does not support Dr. Gomez's assessment that Plaintiff could only twist 1% to 5% in an 8-hour working day.

epilepsy with generalization and with non-intractable epilepsy. (AR 73). This evidence is likely to change the outcome of the decision as the ALJ repeatedly opined that Ms. Luna did not have balance issues; that she has not received ER treatment for seizures; that her seizures are not witnessed and that she sought little treatment for headaches as reasons to reject the less than sedentary RFC determinations.

(ECF No. 20, pp. 37-38).

The Ninth Circuit has concluded "that when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).[10] Here, after considering the new records in light of the record before the ALJ, the Court has already determined, as discussed above, that the ALJ's decision lacked substantial evidence to discount Plaintiff's treating physicians' opinions and Plaintiff's testimony.

## II.  REMEDY

Plaintiff concludes by stating that "her claim [should be] remanded for payment of benefits," or, alternatively, "be remanded for a new hearing." (ECF No. 20, p. 39). The Commissioner argues that, if this Court overturns the ALJ's decision, "the proper remedy is a remand for further administrative proceedings." (ECF No. 24, p. 31).

The decision whether to remand for further proceedings or for immediate payment of

---

[10] While both Plaintiff (ECF No. 20, p. 37) and the Commissioner (ECF No. 24, p. 30) agree that the new evidence may be considered by this Court to determine whether the decision is supported by substantial evidence, Plaintiff asserts that the Appeals Council "improperly failed to consider" the new evidence. (ECF No. 20, p. 37). However, if the Appeals Council actually did not consider the new evidence, it would "not become part of the record" and this Court could "not consider it." *Amor v. Berryhill*, 743 F. App'x 145, 146 (9th Cir. 2018) (unpublished). Here, the Appeals Council acknowledged the new evidence but concluded as follows: "We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence." (A.R. 12). Examining similar language, other courts have reasoned that, although ambiguous, such language indicates that the Appeals Council considered the new evidence, as it would be illogical to conclude that there is not a reasonably probability that new evidence would have changed the outcome of the decision unless the Appeals Council actually considered the evidence. *See Blancett v. Saul*, No. 1:20-CV-00253-SKO, 2021 WL 1736880, at *4 (E.D. Cal. May 3, 2021) (collecting cases). This Court finds this reasoning persuasive and concludes that the Appeals Council considered the new evidence and thus it is part of the record for the Court to consider.

benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test, with each of the following parts of the test needing to be satisfied to remand for benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met, the Court may still remand when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. Notably, remand for further proceedings is the "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, in light of the various medical statements and comments cited above, the Court finds it appropriate to remand for further consideration and potential award of benefits. Although it appears highly likely based on the discussion above that an award of benefits will be the outcome, the Court has not independently prepared a revised RFC based on the limitations discussed above, nor has it obtained vocational evidence or considered application of the grids to this situation. Thus, remand for consideration is appropriate.

## III. CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated: **November 18, 2021**         /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE